(26 Misc. Rep. 436.)

### KITCHING v. SHEAR.

(Supreme Court, Special Term, New York County. February, 1899.)

1. FORECLOSURE SALE—TITLE.
    It is no ground for refusing to accept title under foreclosure sale that there are encroachments on the land of an unsubstantial character.
2. TRANSFER TAX—LIEN—MORTGAGED PREMISES. ·
    On the death of a mortgagor, the premises were devised in fee to one not a relative, who thus became liable to pay a transfer tax. *Held*, that the lien of the state for the tax, given by Laws 1892, c. 399, § 3, was not paramount to the mortgage lien.
3. SAME—FORECLOSURE OF MORTGAGE.
    On foreclosure after death of mortgagor of property subject to a transfer tax, as there is no power given to make the state a party, and as the lien given by the state for such transfer tax continues until the tax is paid, the title tendered to the purchaser is insufficient to compel him to accept the same, as he would take the property subject to the lien of the transfer tax as it existed prior to the sale.

Action by George E. Kitching against Margaret J. Shear to foreclose a mortgage. Motion to compel purchaser at foreclosure sale to take title. Denied.

William H. Sage, for the motion.
W. R. Spooner, opposed.

BEEKMAN, J. This is a motion to compel the purchaser at a foreclosure sale to take title to the mortgaged premises. He has refused to do so on several grounds. Some of these, which were apparent irregularities in certain probate proceedings, have been remedied, leaving two, one of which concerns alleged encroachments upon the property, and the other the question whether there is a lien upon the property by reason of the nonpayment of an inheritance or transfer tax. The former does not require much discussion. Two surveys have been produced, which, as is usual, differ in some respects. Without attempting to enter upon a detailed comparison of the two, it is, I think, sufficient to say that the alleged encroachments are not of such a substantial character as to warrant the court in refus-

ing an order for the completion of the purchase on that ground. Merges v. Ringler, 34 App. Div. 415, 54 N. Y. Supp. 280.

. A more serious question presents itself with respect to the inheritance tax, which, it is conceded, has never been adjusted or paid. It appears that the property in question was owned by one Amy H. Haight at the time of her death, and was at that time subject to the mortgage foreclosed in this action. Mrs. Haight left a will in and by which she devised the mortgaged premises in fee to one Margaret J. Shear, who is a defendant in this action, and who, it is stated, was not a relative of the deceased. The devisee thus became liable to pay a transfer tax by reason of her succession to the property in question pursuant to chapter 399 of the Laws of 1892, entitled "An act in relation to taxable transfers of property," being the statute on that subject in force at the time of the testatrix's decease, which took place on February 20, 1893. Section 1 of the act declares what the tax shall be; section 2 expresses certain limitations and exceptions, which do not apply to the case at bar; and section 3 declares that "every such tax shall be and remain a lien upon the property transferred until paid, and the person to whom the property is so transferred, and the administrators, executors and trustees of every estate so transferred shall be personally liable for such tax until its payment." By section 11 provision is made for the appraisal of the property at its fair market value "at the time of the transfer," and section 22 defines the words "estate" and "property" as used in the act to mean "the property or interest therein of the testator" passing or transferred to those affected with a liability for the tax. Upon the decease of Mrs. Haight, the devise to Mrs. Shear took effect, and the estate or property passing thereunder became subject to the tax, and the subject-matter of the devise became impressed under the statute with a lien therefor "until paid." This lien, however, was not paramount to the lien of the mortgage, which was in existence prior to the decease of the testatrix. So far as the mortgagee is concerned, his rights could not well be impaired by subsequent devolutions of the title and the creation of liens associated therewith. The tax in question is not to be assimilated with the general taxes which are imposed by public authority, and which attach to property affected thereby as a whole, and without discrimination with respect to particular estates or interests therein. The right of the state in such cases is always paramount. It is not concerned with the particular estates or liens which affect the property, but, dealing with it as a whole, imposes the tax, leaving it to the parties interested in the property to secure, as between themselves, such an adjustment of the burden as the circumstances of the case may seem to require. But in the case of the transfer tax a different condition exists. It is imposed upon the right of succession, and is levied upon successors in respect to the shares to which they succeed. In re Hoffman, 143 N. Y. 327, 331, 38 N. E. 311. In no sense, then, can the tax be deemed to affect the interest of one who had a lien upon the property which was paramount to the ownership of the testatrix, and therefore superior to any estate or interest which the testatrix might assume to create in the property. We must, therefore,

consider that the property or estate which became subject to the lien of the tax was the equity of redemption only. If, then, the sale here had been of the interest of the mortgagee in the property only, there would have been no difficulty in holding that the objection was untenable. But that is not the case. The entire title to the property has been sold, thus including the equity of redemption, and the rights and interests of all having any vested interest in, or lien upon, the property subordinate to the plaintiff's mortgage. Unless, then, those having such interests or liens are made parties to the action, it is axiomatic that their rights cannot be cut off or impaired by the sale, and that the purchaser would take title subject thereto. How, then, can the conclusion be avoided that such is the case here? The tax belongs to the state, and the lien which is given to the state to secure its collection is emphatically and in terms declared by the statute to be one that shall continue until the tax is paid. If there were any statutory authority under which the state might be impleaded, and its lien brought under subjection to the judgment of the court, a solution of the difficulty which is presented here would be readily found; but it is a fundamental rule that the state, as sovereign, cannot be sued without its consent, and that such consent must be expressed in statutory form. The plaintiff did not undertake to make the state a party to this action. I am not aware of any statute which would have sanctioned it had it been attempted, so that, even if he had done so, the judgment would have been ineffective as a bar to the collection of the tax out of the property. Nor would the situation have been any better had the state comptroller, or any other public officer concerned with the collection of the tax, been made a party, as they are mere agents for collection, and, having no authority to discharge the lien without payment, the court could not accomplish that result by any judgment it might render against them. I am constrained, therefore, to hold that the title tendered to the purchaser is not that for which he bid, and that if he should complete he would still take the property subject to the lien of the transfer tax as it existed prior to the sale. That this condition of the law works great hardship must be conceded. It virtually prevents a mortgagee from successfully prosecuting his action to foreclose where such a condition of the title exists as is here presented. It is unnecessary to consider what he might do in order to relieve himself from the difficulty. It is sufficient to say that no method that might be adopted could be of any avail which did not result in the payment of the tax. The case is one calling for legislative relief, at least to the extent of authorizing the making of the state a party to a litigation concerning real property where it has a lien thereon for a transfer tax, and where the judgment sought is the sale of the property free from incumbrances. A precedent for such legislation may be found in section 1594 of the Code of Civil Procedure, which declares that the people of the state may be made a party defendant to an action for the partition of real property. It has been suggested that a bond might be required of the mortgagee indemnifying the purchaser against the tax, or that some other expedient might be resorted to which would practically secure him

against loss; but the answer to all this seems to be that his title would still be unmerchantable. The lien would still remain, so that he could not compel a person contracting with him for the purchase of the property to take the title. In the case at bar, indeed, it would be quite impossible to determine what the amount of the tax is, inasmuch as the appraisal of the property must be made on the basis of its market value in 1893, when the testatrix died. No appraisal has as yet been had, and it is impossible to determine in advance what the judgment of the appraisers upon this point will be when proceedings may hereafter be taken to fix the amount of the tax. In a case where the amount of the tax is fixed, and there is a surplus amply sufficient to discharge it, the court could, doubtless, find some practical way of securing a discharge of the lien which would give the purchaser a marketable title. Such conditions, however, do not exist here. It follows that the motion must be denied.

Motion denied.